[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION #126 FOR CONTEMPT AND MOTION #134 FOR CONTEMPT
CT Page 4468
The plaintiff filed Motion #126 for Contempt in the summer of 1995, and a scheduling order was adopted. The matter was assigned for trial, but thereafter counsel filed two motions to continue the trial assignment date. Thereafter the defendant filed her motion for Contempt in the summer of 1996. This case was again scheduled for trial on today's date with a pre-trial order requiring the exchange of documents, pre-marking of exhibits. The defendant did not comply with the pre-trial order and the court granted the plaintiff's motion in limine except for the testimony of the defendant herself.
The plaintiff seeks reimbursement for college expenses. Both parties seek reimbursement for extracurricular activities of the children during their minority, of consequence for the lives of the parties, their daughter, while in college in Oregon, died as a result of a swimming accident at the end of her first year in college. The Separation Agreement, ratified and made part of the judgment of the court on February 9, 1982, contains the provisions for the payment of "other expenses" (Section V, A and B) and "College Education" (Section VI, A).
The plaintiff testified concerning the sums of money expended by him to educate their son to graduation from Yale, and the one year for their daughter at Reed College. (See Plaintiff's 31) The plaintiff also claims that the defendant should be assessed according to the gross amount of One Hundred, Twenty-eight Thousand, Seven Hundred, Eighty ($128,780.00) Dollars. While he testified that he had made an agreement with the children that they pay their own room and board, he retracts that and now expects his former wife to reimburse their son for her share of those expenses. He also claims that the Yale benefit given to the child as a benefit of his employment should not enure to her benefit, but should be his because it is from his work. The plaintiff testified that his out of pocket expenditures for college in total were Seventy-two Thousand, Nine Hundred, Eighty ($72,980.00) Dollars, and conceded that the defendant had made a payment to him of Two Thousand ($2,000.00) Dollars.
The plaintiff offered evidence of calculations of each party's contribution, done by Yale University where their son has attended. The calculations are described in Plaintiff's Exhibit 36. The calculations done by Yale University are institutional and vary from the federal calculations. However, those federal CT Page 4469 calculations are included in the document. Those calculations appear to be more credible to this court.
The plaintiff was cross-examined as to the extent of employer contributions to his retirement account. He testified and the matter was found in Plaintiff's Exh. 2, that his contribution into his retirement plan would be doubled by the employer. He testified that he did not know that CSS did not include pensions when he suggested the language in Section VI. The value of his pensions represents his only significant asset apart from his real estate.
When he brought this motion for contempt, he did not know what he should claim. He now believes that she should contribute about Thirty Thousand ($30,000.00) Dollars. Six months after the action was brought, he could not testify as to the exact claim. He agreed that she had admitted that she should make a contribution, but that they disagreed as to the amount. He also claims interest on those funds, because he has advanced these funds. He claims attorneys fees for the process.
His motion claims other expenses, but he did not keep a ledger. He did not feel that she had the funds to make a contribution, so he never demanded reimbursement. He was unable to provide the court with a fair approximation of that amount, but did voice his complaints concerning her priorities.
The parties agreement states:
"VI. COLLEGE EDUCATION
 A. The Husband and Wife agree that they shall each contributetoward the costs of the college education of their children. Saidcosts shall be defined as room, board, tuition, books,registration, laboratory and special fees. Further, any financialgrants, scholarships or other aid which is obtained by the childfor said costs shall be deducted before determining the parties'respective contributions.
 Each parties' contribution shall be in proportion to theparties' respective ability to pay based upon income and assets,including pension, insurance or retirement plans or accounts, inaccordance with the formula then being used by the CollegeScholarship Service of the College Entrance Examination Board or,if that agency is no longer in existence, an equivalent formulaCT Page 4470of a comparable agency or institution as agreed upon by theparties."
The plaintiff called Robert D. Schorb, who did calculations concerning the College Scholarship Service. He is employed at Skidmore College, in the Financial Aid office, and routinely does these calculations for families and students. He did average calculations for each parent. His report is Plaintiff's Exhibit 35, and it sets forth the calculations based upon certain assumptions. Those assumptions do not count the plaintiff's pension, and more importantly do not utilize the net cost insofar as the Yale benefit was not included. They do include the defendant's daughter's social security supplemental security income. The computation concerning the inclusion in his "family members in college" as including his step-son allows the plaintiff a fifty (50%) percent decrease in his calculation. It affects the proportion of payment for the parties.
The court finds that the inclusion of the defendant's daughter's supplemental security income to be appropriate as it would be included as income in the CSS formula. The court finds that the parties agreed that they would include assets, including pensions, and that the inclusion of pension value in the calculations is appropriate pursuant to the agreement, even though those funds would not be included in the calculation under the CSS formula. The argument made by the plaintiff that the formula requires inclusion of the defendant's trust funds, but not the plaintiff's extensive pension with Yale University is untenable. The court finds that it would be inequitable in light of the clear language of the parties' agreement.
The witness testified that based upon his assumptions and the calculations which appear in his report (Pl. Exh. 35) that the defendant should contribute forty-seven (47%) percent of the monies expended for the college education of the parties' children. After responding to the inquiry of the court, the witness indicated that his opinion would be reduced to forty-five (45%) percent of the monies paid, if the assets and pensions of the parties were included, and if the court credited the inclusion of the step-son in the "students in college" piece of the CSS formula. If the court only credited the plaintiff with one child in college, the percentage would be reduced to twenty-nine (29%) percent.
The defendant claimed that she should contribute twenty-six CT Page 4471 and forty-two hundreds (26.42%) percent of the monies expended. Those calculations were predicated on the income of the parties, but did not appear to be based at all on the CSS formula computation. While the CSS computation is a required element in their agreement, which agreement became the judgment of the court, the court heard expert opinion only from the plaintiff. The court however, did not agree with all assumptions that were made by the expert. The parties had agreed that there contribution would be affected by any grants, scholarships, etc., and the plaintiff argues that the stipend from Yale should not be included, or only credited to him, because it is a benefit of his employment. The court found that argument to be mean-spirited and confrontational.
The plaintiff called the defendant to testify in his case on direct. She has lived in her home for seven (7) years, and has resided with, Mr. Marshall, and currently has a "beau", Andrew Weiner, who spends a great deal of time at that home. She denied that Mr. Marshall was her accountant, but that she did owe him money. She agreed that she had never been given any rent or room and board from either of these gentlemen.
When her second husband died, she received twice his customary annual salary as a benefit. That amount was One Hundred, Thirty Thousand ($130,000.00) Dollars. She sold property in New Haven, and paid over Two Hundred, Fifty Thousand ($250,000.00) Dollars in mortgage debt. She recovered Six Hundred Thousand ($600,000.00) Dollars for her wrongful death action in that her husband had died as a result of asbestosis. Her net recovery was Four Hundred Five Thousand ($405,000.00) Dollar. (See Plaintiff's 27 and 28) She invested some of those proceeds to purchase a Great Western Annuity, and the Fidelity Investments Annuity. She paid Seventy-five Thousand ($75,000.00) Dollars for each. She put approximately One Hundred Thousand ($100,000.00) Dollars into the house.
When she filled out the requests for information for financial aid from Yale, she did not disclose the proceeds of the lawsuit as an asset in the first year, any minimized her holdings thereafter.
During the period of time when their children were in college she vacationed a bit but conservatively. She agreed that she had only contributed Two Thousand ($2,000.00) Dollars toward the college education expenses of the children. `During her CT Page 4472 cross-examination, she said that her communication with the plaintiff was non-existent. She claimed that he never made a claim for contribution toward college education. She claimed that only as they walked out the door of the restaurant did he mention the cost of their education. She claimed that the only demand was when the plaintiff caused her to be served with the instant motion for contempt, and that she only became clear as to her obligation under the terms of the decree when she consulted with counsel in January of 1996. She claimed that she did not know that her share was and that she disagreed with his demands.
She testified that until May of 1996, the plaintiff had demanded forty-nine (49%) percent of the gross cost of the amounts paid, plus interest, and costs of the process. She claimed that her ability to fill out the financial aid forms for Yale was compromised by getting the forms close to the due date, and her attempts to fill them out without help of an accountant or other professional.
She claimed that she thought she would be expected to pay college expenses according to her ability. She has never earned any money from outside employment, and frankly expected the plaintiff to pay the college expenses of the children. She appeared to the court to be a emotionally frail and financially unsophisticated person, who was naive with respect to the requirements of the order of the court. She denied that she had any conversations concerning the plaintiff's dropping any claim for college expenses, although she did say that when the children moved back to New Haven in 1990, she asked him to forego her contribution to college and he refused.
The defendant testified in her own behalf on her claim for reimbursement for expenses for the children, also pursuant to the decree. She claimed approximately Four Thousand ($4,000.00) Dollars. She refreshed her recollection from a document which was a compilation of receipts sent to the plaintiff two or three months after the death of her second husband. The exact total was Three Thousand, Nine Hundred, Twenty-eight and 76/100 ($3,928.76) Dollars. She testified that her ex-husband insisted upon her then husband's tax return, and that her second husband refused. After his death, she sent that return and heard nothing. Also, she did not have the emotional energy or financial resources to bring a contempt motion after her second husband's death. When the claim for college expenses came up, she felt she was entitled to CT Page 4473 refunds.
On cross-examination, she agreed that the parties had never exchanged tax returns, and that she never had a demand from her ex-husband for contribution for children's expenses.
The plaintiff claims that the defendant should be adjudged in contempt of court because of the defendant's lack of disclosure to Yale or to her children or to him of the extent of her assets, and her corresponding unwillingness to offer any funds to defray those expenses. The defendant argues that the parties have not had the ability to resolve this issue because the plaintiff's demands were unliquidated. The defendant claimed that even to the time of trial on this issue the plaintiff had been unable to give a demand as to the amount which he sought to have her contribute toward the college expenses, and that the basis of the demand changed over time. The extent of time that the parties spent during the pretrial period was extensive for the issue involved. The calculations made both by the parties, their counsel, and the expert varied in many respects. The argument of counsel based upon the evidence elicited at trial were equally disparate.
The court has been asked not only to interpret the article in the separation agreement relating to college and other expenses, but to do the computations required. The court has heard the bottom line claim of the plaintiff. He asks for a contribution of "about Thirty Thousand ($30,000.00) Dollars." His own calculations are not precise. The conflict between these parties has such history, and has been exacerbated by the pain of the death of their daughter, that they may not ever be expected to have communication with each other. Many of the agreements which they made as part of their separation agreement were not maintained. The plaintiff stopped making some contributions for the children after he learned of the defendant's pregnancy with her new husband.
After the children moved back to New Haven in 1990, the plaintiff fully supported the children, and did not seek child support, knowing that his former wife was employed only part-time and at a low paying job. Coincidentally, his current wife is also so employed, and has an interest in the arts. While he did meet all of the expenses of the children, he did not maintain records concerning those expenses, and the only amount he could offer was one which he agreed was speculative. The court therefore denies the relief requested on that claim, enunciated as paragraph 2 of CT Page 4474 his #136 Motion for Contempt.
Her claim for reimbursement of expenses for the children was originally sent to the plaintiff after the death of her second husband. The plaintiff did not pay the claimed amount, based upon his testimony that he had met all of the children's expenses, and did not feel he owed her that money. She did not pursue that claim until his action for reimbursement of college expenses. She claimed that she was emotionally and financially unable thereafter to bring the matter to court. The amount is demonstrated by the evidence, and the judgment called for the plaintiff to make these payments. His inaction, and her non-payment of child support thereafter are not a defense to the claim. The court finds that the defendant has proved her claim that the plaintiff owes Three Thousand, Nine Hundred, Twenty-eight and 76/100 ($3,928.76) Dollars. Such amount shall be set-off against that amount awarded by the court for contribution to the college expenses.
The court finds that the defendant willfully concealed her assets from the institutions which computed responsibility for the payment of college expenses. The court finds further that while the defendant may have had real life concerns about her ability to raise, support and educate her daughter without her daughter's father to assist her, her decision not to disclose the funds available to her, and awarded to her in a wrongful death action, was in contempt of the judgment and order of the court. Her lack of candor may well have exacerbated the conflict between the parties, who level of trust is non-existent. The court also notes that the loss of her second husband occurred very close in time as that time during which the children made their decision to return to live with their father in New Haven.
The court finds that the inclusion of the plaintiff's step-son in the CSS calculation is appropriate, and while it serves to reduce his overall percentage of contribution toward the college education of the children of the parties. The court also finds that the agreement that the plaintiff made with the children that they be responsible for part of their educational expenses is not properly retracted for purposes of this contempt motion, and the calculations which the parties ask the court to make. Furthermore, the court finds that the imposition of interest on funds expended was not contemplated by the parties, and will not be a measure of sanctions on this contempt. CT Page 4475
The court finds that the defendant should contribute forty-five (45%) percent of the actual out-of-pocket expenses for the college education of the children. The court finds that the amount is Thirty-two Thousand, Eight Hundred, Forty-one ($32,841.00) Dollars. That amount should be reduced by the payment toward those expenses, and the amount previously found by the court for other expenses. The amount to be paid is Twenty-six Thousand, Nine Hundred, Twelve and 24/100 ($26,912.24) Dollars, and shall be paid in full within thirty (30) days. The defendant has the cash assets to meet the order of the court.
The plaintiff further seeks an award of attorney's fees. The court finds that the defendant is only partially responsible for the protracted legal dispute over these issues. While they are somewhat complicated, the demands of the plaintiff contributed to the failure to resolve the issues. However, the court finds that the need to access the court for resolution began because of the defendant's failure to disclose. The court orders her to make a contribution toward the plaintiff's attorney's `fees in the amount of Five Thousand ($5,000.00) Dollars.
The plaintiff further claimed that the defendant should pay interest on the sums due him for contribution toward college expenses. The court has assessed all of the evidence and denies that claim.
DRANGINIS, J.